PRECEDENTIAL – FOR PUBLICATION

# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| JUAN MENDEZ, RENE VARGAS,<br>FRANK ORTIZ, REYNALDO<br>RODRIQUEZ, and JAMIE GARCIA,<br><br>Plaintiffs<br>v.<br><br>HOVENSA, L.L.C.,<br><br>Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO. 02-0169 |

## MEMORANDUM OPINION

Finch, J.

THIS MATTER comes before the Court on the Motion for Summary Judgment filed by

Defendant Hovensa, LLC.  Plaintiffs oppose such motion.

"The standard for awarding summary judgment is well-worn: it is fitting when 'there is

no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a

matter of law.' Fed. R. Civ. P. 56(c). . . . In considering the evidence, the court should draw all

reasonable inferences against the moving party." El v. Southeastern Penn. Transp. Auth., 479

F.3d 232, 237-38 (3d Cir. 2007).  Therefore, while acknowledging that there are two sides to any

dispute, in presenting the factual background, the Court only recites those facts, and inferences

drawn from those facts, that favor Plaintiffs.

## I.       Factual Background

Of the five Plaintiffs, four were employed by Bechtel Corporation [hereinafter "Bechtel"],

a contractor for Hovensa, and one was employed by a subcontractor of Bechtel, Puerto Rico

International.  They worked at the Hovensa refinery in St. Croix, Virgin Islands in the area of the coker.  In the mid-morning or early afternoon of June 25, 2002, Plaintiffs, along with at least eight other workers, became ill and were ultimately taken to the hospital.  They were diagnosed as suffering from acute gastroenteritis.  For some of the Plaintiffs, the acute gastroenteritis continued to manifest itself as chronic gastroenteritis.

Hovensa immediately suspected the water that Plaintiffs had been provided at the refinery as part of Hovensa's contract with Bechtel as a potential cause of Plaintiffs' sudden illnesses. Hovensa directed that the water be collected and that a representative number of coolers be preserved full of water for testing.  Bechtel made an effort to collect its water-filled coolers in an attempt to prevent more workers from getting sick.

Bechtel generally filled about 120 coolers with water and ice from Hovensa's ice plant each day after scrubbing the coolers with a baking soda and water solution.  A jury could infer that Bechtel cleaned the coolers before filling them on the morning of June 25, 2002.

Initially, Hovensa made no attempt to identify the coolers that were in the areas where those who were affected had been drinking water.  The coolers were widely  distributed and those coolers from which Plaintiffs had drunk were not immediately segregated.  The water from many of the coolers was dumped without being tested.  Only the contents of a few coolers were tested. Thus, the coolers that were ultimately tested probably were not the same ones whose contents were contaminated.

Hovensa eventually realized that the particular coolers that had potentially caused the sickness should be tested.  By the time those coolers were identified and collected, they did not contain an adequate amount of water to perform the range of tests necessary to determine

whether they were contaminated.

The testing that was performed did not conclusively indicate that the water contained any contaminants or toxins, although there was a higher than expected level of total organic compounds in two of the coolers and four coolers had an unusual odor.

Through the use of an accepted scientific methodology, experts eliminated certain food sources as having caused Plaintiffs' gastroenteritis. In their opinions, contamination in the water caused Plaintiffs' illnesses.

Hovensa considered this incident to be serious as evidenced by its not permitting Plaintiffs to speak to the media while they were being treated in the hospital,  involving Hovensa's top management at a post-incident assessment meeting, and causing Plaintiffs' employment to be terminated very shortly after the incident, although their work had not been completed.  Notwithstanding, Hovensa only preserved the coolers that were collected for a short period.  After performing the tests, and having an outside lab perform tests on the contents of some of the remaining coolers, Hovensa eventually released the coolers to the field.  Hovensa knew at the time when it released the coolers that litigation was impending.

## II.      Plaintiffs' Claims

Plaintiffs explicitly assert the following causes of action: negligence, wrongful discharge, negligent and intentional infliction of emotional distress and obstruction of justice.  The Court generously reads the Third Amended Complaint, as it must, Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 87 (3d Cir. 1987), and concludes that it contains averments that raise the following additional causes of action: liability for harm caused by product defect; intentional

interference with performance of contract; negligent spoliation of evidence, and intentional

spoliation of evidence or fraudulent concealment.

## III.    Negligence

The elements of negligence are (1) duty, (2) breach, (3) causation and (4) damages.  See

Restatement (Second) of Torts § 281 (1965).  A reasonable jury could readily find all but the

second element.  Hovensa had a contractual duty to supply potable water to Bechtel.  Experts

opine that the water caused Plaintiffs to become sick. Plaintiffs suffered damages as a result of

the water not being potable.  The difficult question is whether Hovensa breached its duty, i.e.

whether through Hovensa's failure to meet a reasonable standard of care, it provided

contaminated water to Plaintiffs.

Plaintiffs suggest that Hovensa breached the standard of care by not testing the water

frequently enough, by not ensuring that the water hoses and ice scoops were clean, and by not

completing a plan that would reduce the chance of the potable water being contaminated from

another source.  However, from the scant evidence Plaintiffs have presented to support these

potential avenues for contamination, for the jury to find that Hovensa breached its standard of

care, the jury would have to speculate. Thus, the only way that a jury could find that Hovensa

breached its standard of care is through application of the doctrine of *res ipsa loquitur*.

When *res ipsa loquitur* applies, the jury may infer that a plaintiff's harm was caused by

the defendant's negligence.  Restatement (Second) of Torts § 328D.  The three criteria for

application of this doctrine are: "(a) the event is of a kind which ordinarily does not occur in the

absence of negligence; (b) other responsible causes, including the conduct of the plaintiff and

4

third persons, are sufficiently eliminated by the evidence; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff." Id.

For the Court to allow the jury to draw this inference in resolving Plaintiffs' negligence claim against Hovensa, the Court would have to first find that a reasonable jury could determine that it is more likely than not that Bechtel did not cause the water that Plaintiffs drank to be contaminated. See Restatement (Second) of Torts § 328D, cmt. f (indicating that the "more probably than not" standard is to be used in excluding other potentially responsible causes). Only then would the Court permit the jury to apply the *res ipsa loquitur* inference to find that Hovensa breached it duty of care to Plaintiffs.

From the evidence that Bechtel cleaned the coolers each day with a baking soda and water solution before filling them, the Court finds that a jury could reasonable conclude that Hovensa's conduct alone resulted in the water being contaminated. A reasonable jury could then find Hovensa negligent, in that all three requisites are met: (a) water contamination does not ordinarily occur in the absence of negligence; (b) other responsible causes, such as Bechtel's conduct, are sufficiently eliminated and (c) the provision of potable water was within Hovensa's scope of duty to Plaintiffs.

**IV.    Liability for Harm Caused by Defective Product**

Restatement (Third) of Torts: Product Liability § 1 addresses liability of a commercial seller or distributor for harm caused by defective products. It states that "[o]ne engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect."

Plaintiffs allege that Hovensa provided them with unsafe and contaminated drinking water, that they drank the water, and became violently ill.  Thus, they state a claim under section 1.

Hovensa responds that, even if Plaintiffs have stated such a claim, there is insufficient evidence for the claim to go to the jury because there is no evidence that the water was, in any way, defective.  Restatement (Third) of Torts: Product Liability § 3 allows the introduction of circumstantial evidence to support an inference of product defect.  Under section 3:

> It may be inferred that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, when the incident that harmed the plaintiff:
>
> > (a) was of a kind that ordinarily occurs as a result of product defect; and
> > (b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution.

To satisfy the criteria of section 3(b), "the plaintiff must establish by a preponderance of the evidence that the incident was not solely the result of causal factors other than defect at time of sale."  Restatement (Third) of Torts: Product Liability § 3, cmt d.  The evidence shows that Bechtel cleans the coolers each day with baking soda and water.  The jury could find by a preponderance of the evidence that dirty coolers were not the cause of Plaintiffs' illnesses.  After eliminating Bechtel as a possible tortfeasor, the jury could infer that the water must have been contaminated before it was placed in the coolers.  Thus, the Court cannot grant summary judgment on this cause of action.

## V.      Wrongful Discharge Act

Plaintiffs contend that Hovensa wrongfully terminated their employment in violation of

the Virgin Islands Wrongful Discharge Act, 24 V.I.C. § 76.  Hovensa naturally responds that Plaintiffs were not Hovensa's employees, and therefore Hovensa could not have terminated them. Plaintiffs reply that Hovensa was their joint employer along with Bechtel or Puerto Rico International.

"[T]he 'joint employer' concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment."  N.L.R.B. v. Browning-Ferris Indus. of Penn., Inc., 691 F.2d 1117, 1123 (3d Cir. 1982).  "Where this doctrine is operative, an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer."  Arculeo v. On-Site Sales & Marketing, LLC, 425 F.3d 193, 198 (2d Cir. 2005).

The joint employer doctrine is recognized in Title VII employment discrimination cases, Graves v. Lowery, 117 F.3d 723, 729-30 (3d Cir. 1997) as well as other areas of federal labor law, Olivieri v. P.M.B. Const., Inc., 383 F. Supp.2d 393, 401 (E.D.N.Y. 2005) (discussing development of joint employer doctrine under Fair Labor Standards Act and National Labor Relations Act, but finding joint employer doctrine inapplicable in ERISA action).  However, the Court has not identified a case in which the joint employer doctrine has been held to apply under the Virgin Islands Wrongful Discharge Act.  Thus, the Court must predict whether the Virgin Islands Supreme Court would find that a joint employer can be held liable under the Wrongful Discharge Act. See Edwards v. Hovensa, LLC, 497 F.3d 355, 362 n.3 (3d Cir. 2007).

7

In anticipating whether the Virgin Islands Supreme Court would incorporate the common-law joint employer doctrine into the Wrongful Discharge Act, the Court considers the purpose of the joint employer doctrine.  The joint employer doctrine has been viewed as the best means to ensure that the remedial purpose of laws intended to protect workers are fulfilled.  Antenor v. D & S Farms, 88 F.3d 925, 938 (11th Cir. 1996); see also Nelson v. Beechwood Organization,  2004 WL 2978278, at *4 (S.D.N.Y. Dec. 21, 2004) (recognizing joint employer doctrine as serving "the remedial principles underlying Title VII").  Because, like Title VII, the Wrongful Discharge Act has a remedial purpose, the Court predicts that the Virgin Islands Supreme Court would interpret it expansively to incorporate the joint employer doctrine.  Cf. Fenton v. C&C Cons. and Maintenance, Inc., 2007 WL 1202867, at *2  (V.I. Super. Ct. Apr. 4, 2007) (allocating burden of proof under the Wrongful Discharge Act by applying same methodolgy used in Title VII claims).

To survive summary judgment, Plaintiffs must show that a reasonable jury could determine that Hovensa was their joint employer and that Hovensa violated the Wrongful Discharge Act.  "[T]he question of 'joint employer status' is a factual one."  Browning-Ferris, 691 F.2d at 1121.  Factors the Court considers in determining whether an entity is a joint employer include "whether the alleged joint employer (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process."  AT&T v. N.L.R.B., 67 F.3d 446, 451 (2d Cir. 1995).

Plaintiffs have presented evidence to show that Hovensa controlled the hiring and firing.  Plaintiff Juan Mendez testified that Hovensa decides who works in the refinery and who does

not, and that Hovensa directed that he be terminated.  Mendez Dep. 11:19 – 12:11.  Mendez

explained that he was privy to this information as a Senior Craft Supervisor.  Mendez Dep. 12:4-

8.  Although control over hiring and firing is only one attribute of an employer, a jury could

consider this factor alone to be sufficient enough in its calculus to find that Hovensa was

Plaintiffs' joint employer.

In evaluating whether Plaintiffs have established a prima facie case under the Wrongful

Discharge Act, the Court predicts that the Virgin Islands Supreme Court would adopt the Title

VII approach as the Virgin Islands Superior Court did in Fenton v. C&C Constr. and

Maintenance, Inc., 2007 WL 1202867, at *2.  Plaintiffs establish a prima facie case by showing

that they were employees of a covered employer, that they were discharged, and that their

discharges were wrongful.  See Rajbahadoorsingh v. Chase Manhattan Bank, NA., 168 F.

Supp.2d 496, 505 (D.V.I. 2001).  Plaintiffs have met all of these criteria.  They allege that their

discharges were not for one of the nine enumerated reasons under the Wrongful Discharge Act

which renders their discharges wrongful.  See 24 V.I.C. § 76.

"[T]he burden of production shifts to the employer to articulate some legitimate,

statutorily-approved reason for the plaintiff's discharge."  Rajbahadoorsingh, 168 F. Supp.2d at

505.  Hovensa has failed to articulate any reason, relying solely on its argument that it was not

Plaintiffs' joint employer.  Based on this limited record, a reasonable jury could find that

Hovensa wrongfully discharged Plaintiffs.

## VI.     Intentional Interference with Performance of Contract

Even if the jury were to conclude that Hovensa was not Plaintiffs' joint employer,

Hovensa could still be held liable for tortious interference.  Although Bechtel and its subcontractor's work at Hovensa had not been completed, Plaintiffs all were terminated shortly after the incident.  Hovensa has a strong influence on Bechtel's hiring and firing decisions. Indeed, Plaintiffs testified that Hovensa directed Bechtel to terminate them.  Plaintiffs state a cause of action under Restatement (Second) of Torts § 766, which provides:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

A reasonable jury could find that Hovensa intentionally interfered with Plaintiffs' employment contracts involving work at the refinery by causing their employers to terminate them.  Moreover, "[s]ince the tort is an intentional one, punitive damages are recovered . . . under appropriate circumstances."  Restatement (Second) Torts § 774A, cmt a.

## VII.    Negligent Infliction of Emotional Distress

Hovensa moves for summary judgment on Plaintiffs' claims of negligent infliction of emotional distress on the sole ground that Hovensa did not cause any of the emotional distress that Plaintiffs suffered.   Hovensa encourages the Court to find, as a matter of law, that Hovensa did not cause Plaintiffs to become ill on June 25, 2002, which would mean that Hovensa's conduct could not have led to their emotional distress stemming from their illnesses.

For the same reasons that the Court denies summary judgment on Plaintiffs' claim against Hovensa for negligence, the Court denies summary judgment on Plaintiffs' claims for negligent infliction of emotional distress.

10

**VIII.    Intentional Infliction of Emotional Distress**

Plaintiffs allege that Hovensa intentionally caused them to suffer emotional distress by terminating them in retaliation for their drinking contaminated water that Hovensa had supplied. Restatement (Second) of Torts § 46 provides, in relevant part:

§ 46. Outrageous Conduct Causing Severe Emotional Distress

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Restatement (Second) of Torts § 46(1) (1965).

In Smith v. Elias, 2007 WL 4209701, at *6 (V.I. Super. Ct. Oct. 11, 2007), the Superior Court of the Virgin Islands held that "[e]mployer retaliation presumptively meets the extreme and outrageous component for intentional infliction of emotional distress."   A reasonable jury could conclude that Plaintiffs were terminated without explanation very shortly after becoming ill and that Hovensa directed their termination.  From the temporal relationship between the Plaintiffs' discharges and the onset of their illnesses, a reasonable jury could infer that the firings were retaliatory.

While the court's opinion in Smith v. Elias  is not binding on this Court, and may be factually distinguishable, the Court is guided by it.  See Edwards, 497 F.3d at 362, n.3.  The Court will not grant summary judgment on Plaintiffs' claims of intentional infliction of emotional distress.

**IX.    Negligent or Intentional Destruction of Evidence**

Plaintiffs urge the Court to recognize the torts of first-party negligent and intentional

11

spoliation of evidence. "Spoliation" "is the term used to describe the hiding or destroying of evidence." Rosenbilt v. Zimmerman, 766 A.2d 749, 754 (N.J. 2001). "A first party [defendant] spoliator is a party to the underlying action who has destroyed or suppressed evidence relevant to the plaintiff's claims against the party."[1]   Rizzuto v. Davidson Ladders, Inc., 905 A.2d 1165, 1173 n.4 (Conn. 2006) (citations and quotations omitted).

Apparently, neither the Supreme Court nor the Superior Court of the Virgin Islands has been confronted with whether to recognize the tort of spoliation in any of its guises. Because the Court must apply Virgin Islands law in resolving these questions, it must predict what the Supreme Court of the Virgin Islands would decide. See Edwards, 497 F.3d at 362 n.3.

The Supreme Court, like this Court, is bound by 1 V.I.C. § 4, which provides:

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

An independent tort of negligent spoliation is not expressly recognized in the Restatements (Second) of Torts. The Court has not been able to identify a single jurisdiction in which a cause of action for negligent spoliation is cognizable against a first-party spoliator. The cases that Plaintiff cites in support of its opposition, such as Boyd v. Travelers Ins. Co., 652 N.E.2d 267, 271 (Ill. 1995), recognize a tort of negligent spoliation only against a third-party. The tort of negligent spoliation against a first-party defendant is considered unnecessary because

---

[1] "A third-party defendant spoliator . . . is alleged to have destroyed evidence relevant to the plaintiff's causes of action," but is "not alleged to have committed the underlying tort as to which the lost or destroyed evidence related." Rizzuto v. Davidson Ladders, Inc., 905 A.2d 1165, 1173 n.4 (Conn. 2006) (citations and quotations omitted).

12

"sufficient remedies already exist to compensate the party injured by the negligent spoliation" including an adverse inference instruction and sanctions.  Hannah v. Heeter, 584 S.E.2d 560, 567 (W. Va. 2003).

Because the common law, as generally understood and applied in the United States, does not provide for a tort of negligent spoliation against a first-party defendant, the Court predicts that the Supreme Court of the Virgin Islands would not recognize such a tort.  Therefore, the Court dismisses Plaintiffs' Third Amended Complaint for failure to state a claim, to the extent that it alleges negligent spoliation.

Although the highest courts of a number of states do not recognize the tort of intentional spoliation against a first-party spoliator, see, e.g. Gribben v. Wal-Mart Stores, Inc., 824 N.E.2d 349, 354 (Ind. 2005),  several do, see, e.g., Rizzuto, 905 A.2d at 1173 (recognizing tort "when a first party defendant destroys evidence intentionally with the purpose and effect of precluding a plaintiff from fulfilling his burden of production in a pending or impending case").  Indeed, there is a recent trend in that direction.  See In re Tri-State Armored Services, Inc., 332 B.R. 690, 738 (Bankr. D.N.J. 2005).  Courts are more prone to hold first-party spoliators liable for intentional than for negligent destruction of evidence, because "intentional spoliation of evidence is misconduct of such a serious nature, [that] the existing remedies are not a sufficient response." Hannah, 584 S.E.2d at 571; see also Rizzuto, 905 A.2d at 1173 (holding that tort of intentional spoliation of evidence "is necessary to compensate the victims of spoliation and to deter future spoliation").

Some courts look to the Restatement (Second) of Torts as providing a foundation for the tort of intentional spoliation of evidence.  For example, the New Mexico Supreme Court relied

13

on the Restatement (Second) of Torts § 870 (1977) in recognizing a cause of action for

intentional spoliation of evidence.  Coleman v. Eddy Potash, Inc., 905 P.2d 185, 189 (N.M.

1995).  Section 870 provides:

> One who intentionally causes injury to another is subject to liability to the other
> for that injury, if his conduct is generally culpable and not justifiable under the
> circumstances.

Rather than create a new tort for intentional spoliation of evidence, the New Jersey

Supreme Court considered a claim for intentional spoliation of evidence to be "an invocation of

the previously recognized tort of fraudulent concealment, adapted to address concealment or

destruction during or in anticipation of litigation."  Rosenblit, 766 A.2d at 757.  Restatement

(Second) of Torts § 550 makes a party liable for fraudulent concealment "who by concealment or

other action intentionally prevents the other from acquiring material information."

To prove fraudulent concealment or destruction of evidence in New Jersey, the plaintiffs

must show:

> (1) That defendant in the fraudulent concealment action had a legal obligation to
> disclose evidence in connection with an existing or pending litigation;
> (2) That the evidence was material to the litigation;
> (3) That plaintiff could not reasonably have obtained access to the evidence from
> another source;
> (4) That defendant intentionally withheld, altered or destroyed the evidence with
> purpose to disrupt the litigation;
> (5) That plaintiff was damaged in the underlying action by having to rely on an
> evidential record that did not contain the evidence defendant concealed.

Rosenblit, 766 A.2d at 757-58.  Compensatory damages, as well as punitive damages, may be

award for such intentional wrongdoing.  Id. at 758.

The Court predicts that the Supreme Court would either find that a cause of action for

intentional destruction of evidence is cognizable under a traditional common law theory, such as

fraudulent concealment, as did the New Jersey Supreme Court, or find a new tort of intentional spoliation of evidence grounded in the Restatement (Second) of Torts, as did the New Mexico Supreme Court.  Therefore, the Court will not dismiss Plaintiffs' claim that Hovensa intentionally destroyed evidence for failure to state a claim.

The Court must consider whether there are any genuine issues of material fact as to whether Hovensa intentionally destroyed any evidence.  A jury could find some of the elements of fraudulent concealment.  Hovensa was obliged to preserve the water as material to impending litigation.  Plaintiffs could not obtain this water from any other source.  However, there is a paucity of evidence to show that Hovensa intentionally emptied the water from the coolers to disrupt the litigation.

There is no indication that Hovensa directed the emptying of the coolers from which the sickened workers had drunk.  Rather, Hovensa intended to and did perform water testing, which was one of its purposes for having the coolers collected (in addition to preventing further illnesses).

The testing that was performed did not indicate that the water was contaminated. Because such evidence tends to defeat Plaintiffs' causation theory, Hovensa would have had a far greater incentive to preserve the water that had been collected and tested than to release it. Finally, there is no evidence to suggest that Hovensa's culpability was more than that of negligence in its handling of the coolers after the testing.

After suspecting that the water caused refinery workers to get sick, Hovensa should have obtained samples of water from the very coolers that were potentially contaminated.  Hovensa should have preserved these samples in anticipation of litigation.  Plaintiffs would then have

15

been able to obtain such samples in discovery to perform independent testing.

Notwithstanding this failure on Hovensa's part, a reasonable jury, viewing the evidence presently of record, could not find that Hovensa intentionally emptied or released the coolers with the purpose of disrupting litigation. Thus, even if the Virgin Islands were to recognize a claim for fraudulent concealment, or a distinct tort of first-party intentional spoliation, Hovensa is entitled to judgment as a matter of law under these circumstances.

## X.      Conclusion

The Court dismisses Plaintiffs' claim for negligent spoliation of evidence for failure to state a claim for which relief can be granted. It grants summary judgment in Hovensa's favor on Plaintiffs' claim for intentional spoliation of evidence or fraudulent concealment. The Court denies summary judgment on all of Plaintiffs' other claims: negligence, liability for product defect, wrongful discharge in violation of the Wrongful Discharge Act, intentional interference with contract, and negligent and intentional infliction of emotional distress. Because intentional causes of action remain, relief may be had in the form of punitive damages.

ENTER:


DATE:  March 24, 2008                            _____/s/_____
                                                 RAYMOND L. FINCH
                                                 DISTRICT JUDGE

16