PRECEDENTIAL – FOR PUBLICATION

# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | | |
|---|---|---|
| JUAN MENDEZ, RENE VARGAS, FRANK ORTIZ, REYNALDO RODRIQUEZ, and JAMIE GARCIA, | ) ) ) ) | |
| Plaintiffs | ) | |
| v. | ) | CIVIL NO. 02-0169 |
| | ) | |
| HOVENSA, L.L.C., | ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Finch, J.

THIS MATTER comes before the Court on the Notice of Appeal with Objections to Magistrate Judge's Order.  Defendant Hovensa, L.L.C. objects to the Magistrate Judge's Order Regarding Defendant's Motion to Disqualify filed on November 9, 2007.

Hovensa moved to disqualify Plaintiffs' counsel for communicating *ex parte* with one of its employees, Shift Supervisor, Cecil Hodge, in violation of Rule 4.2 and 4.3 of the American Bar Association's Model Rules of Professional Conduct [hereinafter "MRPC"], which are adhered to in the District Court of the Virgin Islands.  See LRCi 83.2(a)(1);  see also Bell Atlantic Corp. v. Bolger, 2 F.3d 1304, 1316 (3d Cir. 1993) (holding that "ethical standards imposed upon attorneys in federal court are a matter of federal law").

Hovensa objects to the Magistrate's Order on the grounds that the Magistrate Judge (1) erred in finding that Hovensa had not proven that Hodge's acts or omissions could be imputed to Hovensa; (2) refused to consider whether Hodge's statements could be used as admissions

against Hovensa; and (3) failed to consider the applicability of Rule 4.3.[1]

## I. Factual Background

Plaintiffs accuse Hovensa of providing them with contaminated water that made them sick. They also contend, *inter alia*, that Hovensa hid evidence to disrupt the litigation.[2] Plaintiffs communicated with Hodge to determine the types of documents Hovensa typically generated when an unusual event occurred and because they believed that he might have information that would tend to show that Hovensa had hidden documents.

Plaintiffs' investigator contacted Hodge to arrange a meeting between Plaintiffs' counsel and Hodge. The investigator advised Hodge that Plaintiffs' counsel was representing Plaintiffs in a case involving Hovensa and explained that Plaintiffs were suing Hovensa. Tr. 33:13-19.

Hodge provided an affidavit indicating that one of the pages of the log report that he had completed on the day of the incident was missing as well as the day's log for another area of the Hovensa refinery, the West Utility. He also avers that the Hovensa shift supervisor would have prepared an incident report.

---

[1] Hovensa also objects to the Magistrate Judge's discussion of whether disqualification would be proper even if the MRPC had been violated. The Court declines to reach this hypothetical question of when disqualification is warranted in view of the stricture against rendering an advisory opinion. See Preiser v. Newkirk, 422 U.S. 395, 401 (1975) (restating that "a federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them").

[2] The Court dismissed Plaintiffs' claim for negligent spoliation of evidence and granted summary judgment on Plaintiffs' claim for intentional spoliation of evidence, or fraudulent concealment. These rulings are not pertinent in deciding this appeal. That the jury will not decide these claims does not alter Plaintiffs' objective in contacting Hodge or the nature of the information Plaintiffs obtained from Hodge.

**II.     Whether Plaintiffs' Counsel Violated Rule 4.2**

Rule 4.2 provides:

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

"The purpose of Rule 4.2 is to prevent lawyers from taking advantage of un-counseled lay persons and to preserve the efficacy and sanctity of the lawyer-client relationship." Carter-Herman v. City of Philadelphia, 897 F. Supp. 899, 901 (E.D. Pa. 1995).

Plaintiffs' counsel insists that she did not violate this rule by speaking with Hodge even though Hodge worked for Hovensa who was represented.  According to Plaintiffs, counsel for Hovensa represented only certain categories of Hovensa employees.  "Because an organization acts only through its employees, the rule must extend to some of these employees. However, most courts have rejected the position that the rule automatically prevents an attorney from speaking with all employees of a represented organization."  Messing, Rudavsky & Weliky, P.C. v. President and Fellows of Harvard College, 764 N.E.2d 825, 830 (Mass. 2002); see also Patriarca v. Center for Living & Working, Inc., 778 N.E.2d 877, 880 (Mass. 2002) (commenting that "[a]n organization may not assert a preemptive and exclusive representation by the organization's lawyer of all current (or former) employees as a means to insulate them all from *ex parte* communication with the lawyers of potentially adverse parties");  ABA Formal Op.  95-396 (Jul. 28, 1995) ("[A] lawyer representing the organization cannot insulate all employees from contacts with opposing lawyers by asserting a blanket representation of the organization").

The American Bar Association [hereinafter "ABA"] has considered the question of which

3

employees can be classified as being represented by a corporation's counsel.  The ABA does not construe Rule 4.2 as rendering every employee who works for an employer off-limits to opposing counsel by virtue of being represented by corporate counsel.  Rather the ABA interprets Rule 4.2 as limiting such protection to "a constituent of the organization [(1)] who supervises, directs, or regularly consults with the organization's lawyer concerning the matter or" (2) "whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability" or (3) who "has authority to obligate the organization with respect to the matter."  MRPC 4.2, cmt. 7.

Hovensa concedes that Hodge is not an employee "who supervises, directs, or regularly consults with the organization's lawyer concerning the matter."  Thus, the Court only considers whether Hodge falls into either of the other two classifications of employees with whom *ex parte* contact is prohibited.

  A. Hodge's Conduct Cannot Be Imputed.

The Magistrate Judge wrote: "The Court finds that Defendant has failed to demonstrate that Mr. Hodge performed any acts or omission that might be imputed to Defendant for purposes of liability in connection with this matter."  After reviewing the evidence, the Court agrees with this finding.

In Curley v. Cumberland Farms, 134 F.R.D. 77 (D.N.J. 1990), the court considered when acts or omissions may be imputed to a corporation.  Although the question presented in that case involved former non-managerial employees of a corporate defendant, the court's analysis is generally applicable.  The court held that

> informal interviews of former non-managerial employees of a corporate defendant are not ethically prohibited by RPC 4.2 unless the person's act or omission is believed to be so central and obvious to a determination of corporate liability that the person's conduct may be imputed to the corporation. By focusing upon acts or omissions, the "imputed liability" prong of RPC 4.2 precludes such contacts only with actors, not mere witnesses. If it is not reasonably likely that the person may be a central actor for liability purposes, nothing in RPC 4.2 precludes informal contact with such a former employee. Absent such circumstances, RPC 4.2 does not empower the organization to create a fiction-piece in which its attorney is deemed to represent former employees for the sake of barring an adversary's informal contacts with them.

Id. at 91.

The court also acknowledged that "[w]hether a person's conduct 'may be imputed' means something more than a fanciful construct of potential liability, and it must be determined instead by reference to the circumstances of the case." Id. at 88-89. The focus is on the individual's conduct (the person's own "act or omission") "so that a fair-minded person could foresee imputation of liability." Id.

The plaintiff is not required to rule out imputation of hypothetical liability. "[O]ne could almost always conjure up a 'scenario' in which it would be learned that somebody did something that 'could' be imputable to the corporation." Id. at 89. Rather the burden rests on the corporation to show that the employees' conduct may be imputed. Id.

The court in Curley noted that many courts have held ex parte contact to be proper even when the person contacted is a current employee whose conduct was central to plaintiff's case against the organizational defendant. Id. at 90 (citing Morrison v. Brandeis University, 125 F.R.D. 14, 19 (D. Mass. 1989) (permitting *ex parte* interviews of members of defendant's tenure committee who voted to deny tenure to plaintiff); Mompoint v. Lotus Development Corp., 110 F.R.D. 414, 418 (D. Mass. 1986) (permitting *ex parte* contacts with female employees of the

defendant who allegedly lodged complaints against the plaintiff for improperly requesting sexual favors which defendant insisted resulted in plaintiff's termination from the company); and Lizotte v. New York City Health & Hosp. Corp., 1990 Lexis 2747, at *15 (S.D.N.Y., Mar. 13, 1990) (permitting *ex parte* contacts with current employees of defendant psychiatric hospital in civil rights action challenging the constitutionality of conditions at the state facility)). From this, the court in Curley concluded that "[r]outine informal interviews of such persons who are not believed to be central to the case are a staple of good, ethical trial preparation." Id.

Hodge does not suggest that he removed a page from the log report, or that he was under any obligation to prevent the removal of the missing page from the log report that he had completed. He certainly does not infer that he had any responsibility regarding the West Utility log. Finally, although Hodge implies that an incident report was not produced to Plaintiffs, he does not indicate that he was responsible for preparing, preserving or producing the incident report. Hodge's averments tend to prove that Hovensa has not complied with its discovery obligations and may have hidden evidence. But, it is not Hodge's conduct for which Plaintiffs seek to hold Hovensa liable.

Plaintiffs elicited facts from Hodge which are prejudicial to Hovensa. However, Rule 4.2 was not intended to block the flow of prejudicial information. See Messing, Rudavsky & Weliky, P.C., 764 N.E.2d at 833 (stating that purpose of Rule 4.2 is "not to protect a corporate party from the relevation of prejudicial facts"); Action Air Freight, Inc. v. Pilot Air Freight Corp., 769 F. Supp. 899, 903 (E.D. Pa. 1991) (noting that anti-contact rule "should not necessarily chill the flow of harmful information"); Hanntz v. Siley, Inc., 766 F. Supp. 258, 267 (D.N.J. 1991) (cautioning that "the policies of Rule 4.2 do not justify a wholesale restriction on

discovery of factual information, damaging or not"); Curley, 134 F.R.D. at 83 ("The courts cannot permit ethical rules to be used by a party to chill the flow of potentially harmful information to opposing counsel where the danger of an ethical violation is minute."); Di Ossi v. Edison, 583 A.2d 1343, 1347 (Del. Super. Ct. 1990) (observing that ethical rules are not designed to "place a limit on discoverable material"). That such information was obtained *ex parte* from a Hovensa employee is not sufficient to demonstrate that Plaintiffs' counsel violated Rule 4.2.

> B. Extending Rule 4.2 to Prohibit *Ex Parte* Elicitation of 801(d)(2)(D) Evidence Conflicts with the ABA's Interpretation of Rule 4.2.

Hovensa argues that the Court should find that Plaintiffs' counsel violated Rule 4.2 by speaking with Hodge *ex parte* because Hodge was represented by Hovensa's counsel in that Hodge's statement may be admissible under Fed. R. Evid. 801(d)(2)(D) as "a statement made by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed. R. Evid. 801(d)(2)(D). The ABA, before the 2002 revision to the commentary, explained the scope of Rule 4.2 protection as prohibiting communication with an employee (1) with "a managerial responsibility on behalf of the organization;" (2) "whose act or commission in connection with this matter may be imputed to the organization for purposes of civil or criminal liability" or (3) "whose statement may constitute an admission on the part of the organization." MRPC, cmt. 4 (2001). When this older commentary is compared with the commentary as it was revised in 2002, it appears that the language "whose statement may constitute an admission on the part of the organization" was replaced by the reference to an employee who "has authority to obligate the organization with

7

respect to the matter."

The ABA's annotation to Rule 4.2 explains the reason for this revision: "The original formulation, which included 'any other person . . . whose statement may constitute an admission on the part of the organization,' had proved too broad and potentially open-ended; it had been read to prohibit communication with anyone whose testimony would be admissible against the organization as an exception to the hearsay rule." Am. Bar Ass'n, Annotated Model Rules of Professional Conduct 4.2 (5th ed. 2003). Thus, the ABA intentionally modified its commentary to Rule 4.2 so that Rule 4.2 would not be interpreted as coextensive with the admission exception to the hearsay rule, Fed. R. Evid. 801(d)(2)(D). See Paris v. Union Pacific R. Co., 450 F. Supp.2d 913, 915 (E.D. Ark. 2006) (reasoning that ABA amended commentary to Rule 4.2 to avoid interpretation barring communication with employee whose testimony would be admissible as 801(d)(2)(D) exception to hearsay rule).

The ABA had never intended that Rule 4.2 be used to bar *ex parte* communication with every employee whose statement would be admissible in evidence under Fed. R. Evid. 801(d)(2)(D). That the ABA amended the commentary as it did reflects the ABA's initial intention that Rule 4.2 not be construed as prohibiting *ex parte* contact with anyone whose admission could be used against the company. The ABA's objective has always been to indicate, through its commentary, that Rule 4.2 be interpreted as preventing *ex parte* communication with someone who was speaking with the authority to bind or otherwise obligate the company.

This speaking authority interpretation corresponds with the Restatement (Second) of Agency § 286 and the Restatement (Third) of Law Governing Lawyers § 100. Because the Restatements provide the common law of the Virgin Islands, in the absence of local law to the

8

contrary, 1 V.I.C. § 4, the Court relies on these Restatements, in construing the commentary to Rule 4.2 and Rule 4.2 itself.

      C.      The Restatement (Second) of Agency on Admissions Does Not Extend to Rule 801(d)(2)(D) Evidence

According to Restatement (Second) of Agency § 286, a statement by an agent is not admissible in evidence as an admission of the principal unless it is with reference to a matter and on an occasion when he or she is authorized to speak:

> In an action between the principal and a third person, statements of an agent to a third person are admissible in evidence against the principal to prove the truth of facts asserted in them as though made by the principal, if the agent was authorized to make the statement or was authorized to make, in the principal's behalf, any statements concerning the subject matter.

If statements are not admissible in evidence as an admission of the principal, the principal has no justification for barring *ex parte* contact with the speaker. Thus, the scope of Restatement (Second) of Agency § 286 informs the Court in its construction of Rule 4.2.

"The general rules concerning the interpretation of authority are applicable in determining whether an agent has authority to make statements concerning operative or other facts." Restatement (Second) of Agency § 288 (1). For the statements of an agent to constitute an admission on the part of the principal, the agent must have been given specific authority to speak on behalf of the principal. "Authority to do an act or to conduct a transaction does not of itself include authority to make statements concerning the act or transaction." Restatement (Second) of Agency § 288(2). Furthermore, "[a]uthority to make statements of fact does not of itself include authority to make statements admitting liability because of such facts." Restatement (Second) of Agency § 288(3); see also Bristol Wholesale Grocery Co. v. Municipal Lighting Plant Com., 200

9

N.E.2d 260, 263 (Mass. 1964) (citing section 286 for proposition that "mere fact that [individual] was defendant's plant manager does not of itself give him authority to admit liability").

Speaking authority may be expressed or implied. See Restatement (Second) of Agency § 7 cmt. c (1957). Express authority exists when the principal tells an agent that he or she may make certain statements, representations, or admissions. "Implied speaking authority will exist when the principal appoints the agent to a position that normally carries with it the authority to make certain statements and from which position the agent reasonably believes that he is authorized to make such statements." Diversified Dev. & Inv. v. Heil, 889 P.2d 1212, 1220 (N. Mex. 1995). Thus, an individual's managerial level within a corporation is relevant to whether that individual has implied speaking authority.

A comment to Restatement (Second) of Agency § 288 entitled "*Statements not in course of agency*," emphasizes that the authority to speak on behalf of the principal must be specially and specifically authorized:

> To make evidence of an agent's statements admissible against the principal under the rule stated in Section 286, it is not enough that the principal is willing or permits the agent to speak. The speaking must be done in the capacity of agent and be connected with the business of the principal. Thus, when after an accident, an employer tells the employee who caused it that he may speak freely to any person concerning his conduct, the employee is not acting as an employee in making statements about it, unless in speaking he is carrying out the employer's business. He may be employed to make statements generally on behalf of the principal, as in the case of a person whose duty it is to make statements for the press, or it may be his duty to make statements only to particular persons. If his authority is to make statements only to particular persons or upon a particular occasion, the principal is not affected by statements made by him to other persons or upon other occasions.

Restatement (Second) of Agency § 288, cmt. c. The nature and extent of the authority must be inferred from other evidence and cannot be based on the out of court declaration of the alleged

agent.  Restatement (Second) of Agency § 285.  Independent proof of the existence of the agency and its scope must be shown.  Id.

The phrase "authority to obligate" corresponds neatly with these principles of agency law.  Thus, the Court interprets the "authority to obligate" by applying these principles.  The authority to obligate, so construed, would not extend so broadly as to encompass every statement that would be considered an admissible admission under Fed. R. Evid. 801(d)(2)(D).

>   D. The Restatement (Third) of the Law Governing Lawyers Does Not Classify Employees Whose Statements are Admissible under Rule 801(d)(2)(D) as Represented.

The Restatement (Third) of the Law Governing Lawyers § 99 provides a "General Anti-Contact Rule" with regard to a represented nonclient.  Except for specified exceptions "A lawyer representing a client in a matter may not communicate about the subject of the representation with a nonclient whom the lawyer knows to be represented in the matter by another lawyer or with a representative of an organizational nonclient so represented as defined in section 100."

> Section 100(2) defines an organizational represented nonclient as
>
> a current employee or other agent of an organization represented by a lawyer:
>
> (a) if the employee or other agent supervises, directs, or regularly consults with the lawyer concerning the matter or if the agent has the power to compromise or settle the matter;
>
> (b) if the acts or omissions of the employee or other agent may be imputed to the organization for purposes of civil or criminal liability in the matter; or
>
> (c) if a statement of the employee or other agent, under applicable rules of evidence, would have the effect of binding the organization with respect to proof of the matter.

Restatement (Third) of the Law Governing Lawyers § 100(2).  Subsection (c), regarding a

11

statement that has the effect of binding the organization, is comparable to Rule 4.2 commentary's "statement with authority to obligate an organization." Thus, interpretations of subsection (c) are pertinent in construing Rule 4.2.

Comment e states that "[e]mployees or agents are not included within Subsection 2(c) solely on the basis that their statements are admissible evidence. A contrary rule would essentially mean that most employees and agents with relevant information would be within the anti-contact rule . . . ." Restatement (Third) of the Law Governing Lawyers § 100(2), cmt e. Moreover, if subsection c were interpreted to mean any employee whose statement adverse to the organization's case could be admitted as an exception to the hearsay rule, most every (if not every) employee or agent would fall under category c, and therefore, subsection a and b would be unnecessary. Harry A. v. Duncan, 330 F. Supp.2d 1133, 1140 (D. Mont. 2004).

Similarly, if Rule 4.2 were to include any statement admissible under the hearsay rule, there would be no need for specifically blocking *ex parte* questioning of employees whose conduct could be imputed to the company, since such statements would fall under Fed. R. Evid. 801(d)(2)(D). In other words, to read Rule 4.2 so broadly would make the other categories identified in comment 7 superfluous. Thus, Hovensa's argument that Model Rule 4.2 should be interpreted as coextensive with Fed. R. Evid 801(d)(2)(D) is contrary to the Restatement (Third) of the Law Governing Lawyers as well as a logical construction of the commentary to Rule 4.2.

    E.    Extending Rule 4.2 to Prohibit *Ex Parte* Elicitation of 801(d)(2)(D) Evidence Would Violate MRPC 1.13.

To interpret Rule 4.2 as coextensive with Rule 801(d)(2)(D) would force representation on employees who have not consented to such representation. By contending that Plaintiffs'

12

counsel cannot communicate with its employees, Hovensa is, in effect, asserting that it is representing all of its current employees. Hovensa has failed to recognize that an organization cannot unilaterally impose representation on its employees (except those who are in effect its alter-egos). Carter-Herman v. City of Philadelphia, 897 F. Supp. 899, 903 (E.D. Pa. 1995); Brown v. St. Joseph County, 148 F.R.D. 246, 251 (N.D. Ind. 1993). "Such an 'automatic representation' rule would serve no useful purpose, but would instead impede the course of investigation leading to or following the filing of a lawsuit." Michaels v. Woodland, 988 F. Supp. 468, 474 (D.N.J. 1997).

Representation of a corporation conflicts with representation of its employees in violation of MRPC 1.13(g), when the employees and corporation have adverse interests. Under MRPC 1.13(g), "[a] lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7." MRPC 1.7 prohibits a lawyer from representing two clients with adverse interests or when the representation of one client may be materially limited by the lawyers' responsibilities to another client, unless the lawyer reasonably believes that the representation will not adversely affect the relationship with the other client, and both parties consent to the dual representation.

"[I]f [employees] provide information supportive of the plaintiff's position, serious questions may arise regarding the ability of counsel for the defendants to ethically represent the defendants and at the same time represent [employees] who may be testifying against the defendants." Michaels, 988 F. Supp. at 474. In Michaels v. Woodland, the District Court of New Jersey considered RPC 1.13, the New Jersey equivalent to MRPC 1.13 in determining the scope of RPC 4.2, the New Jersey equivalent to MRPC 4.2. Id. Michaels involved a medical

13

malpractice action against a physician and hospital. Id. at 469-70. The plaintiff sought to conduct ex parte interviews of those hospital employees who had participated in her post-operative care. Id. The hospital urged that such ex parte contact should be prohibited because the hospital had offered representation to the people who had provided post-operative care. Id.

The court questioned whether such witnesses would even be entitled to representation under RPC 1.13. Id. at 474. The court was concerned whether the dual representation might violate the New Jersey equivalent to MRPC 1.7. Id. The court in Michaels allowed *ex parte* interviews of the nurses and nurses assistants who had provide post-operative care because the defendants had not determined whether the dual representation would result in a conflict of interest contrary to RPC 1.13. Id.

This Court has also recognized potential problems with dual representation. In Williams v. Rene, the Court sua sponte raised the question of whether a lawyer should be prohibited from representing both the corporation and an employee. 886 F. Supp. 1214, 1218 (D.V.I.) rev'd on other grounds, 72 F.3d 1096 (3d Cir. 1995). The Court considered the interests of an employee to be potentially adverse to that of the corporation and was concerned that the same lawyer represented both the employee and the corporation. Id. at 1218-19. The Court stated:

> [T]he Court is compelled to comment on the conduct of the defense attorney during trial. Most importantly, the Court is dismayed -- but obligated -- to note the lack of consideration the defendants' legal team has given to the representation needs of Mr. Rene during this case. At trial, one attorney, Mr. Cole, represented both Esso and its employee, Mr. Rene. Despite his obligation to represent both of his clients loyally and zealously, this attorney has pursued a strategy in which the representation of Mr. Rene appears to have been sacrificed for the representation of Esso. While the question of the ethical conduct of the attorneys for the defense in this matter has not been formally challenged by either party, the Court is distressed by what appears to be undue attention given to the defense of Esso at the expense of Mr. Rene.

Id. (footnotes omitted).  Thus, for a corporation to impose automatic representation on its employees in attempt to deprive opposing counsel from informal contact with its employees would not only force representation on employees without their consent, it would also violate Model Rule 1.13(g), as in Williams v. Rene, unless a determination is made that dual representation will not result in a conflict of interest.

> F. Interpreting Rule 4.2 as Prohibiting *Ex Parte* Communication with any Employee Whose Statements are Admissible under Fed. R. Evid. 801(d)(2)(D) is Unnecessary and Unacceptably Stifles the Flow of Information.

To construe the authority to obligate as including all statements that would be admissible under Fed. R. Evid. 801(d)(2)(D) would unnecessarily protect the organization, since unlike binding admissions, such statements may be rebutted.  The court in Morrison v. Brandeis University, 125 F.R.D. 14, 19 (D. Mass. 1989) did not find a Rule 4.2 violation when committee members who made a tenure decision on behalf of Brandeis University were interviewed *ex parte:*

> From Brandeis' point of view, it is true that the statements made to plaintiff's counsel by the various Brandeis faculty members who were members of the committees which participated in the decision might be admissible at trial against Brandeis pursuant to Rule 801(d)(2)(D), F.R.Evid. However, this fact, in and of itself, does not mean that Brandeis' counsel has to be present at the interviews of these committee members in order to insure "effective representation" of Brandeis. I have no doubt that Brandeis, at the time decisions were being made, caused a meticulous written record to be made which detailed the non-discriminatory reasons for the decision and the facts which supported the decision.

Thus, the court found that permitting counsel to conduct interviews of employees whose statements would be admissible into evidence under Rule 801(d)(2)(D) did not cause unfair prejudice to the corporation.

15

Like Brandeis University, Hovensa has had ample opportunity to conduct its own investigation including interviewing Hodge. So armed, Hovensa has the ability to defend itself against Hodge's testimony.

If contact with any employee whose statement would be admissible against the employer under Fed. R. Evid. 801(d)(2)(D) were prohibited, contact with virtually all employees would be barred. Such a rule "would be easily administered but at an unacceptably high cost." Restatement (Third) of Law Governing Lawyers § 100 cmt b.

> Under such a rule, the organization's lawyer could deny permission for the inquiring lawyer to speak to any employee. The opposing party would thus be required to resort to the burdensome process of filing suit (based on less information than would otherwise be available) and obtaining discovery to gain access to relevant information. Moreover, employees may be unwilling to speak as freely or candidly at a deposition in the presence of the lawyers for their employer as in an informal, pretrial interview. There is no justification for permitting one party thus to control entirely the flow of information to opposing parties. Such control is not available to an individual party, whose friends and colleagues may be approached without infringing the rule.

Id.

Failure to permit *ex parte* communication with the employees of corporate adversaries "closes off avenues of informal discovery of information that may serve both the litigants and the entire justice system by uncovering relevant facts." Niesig v. Team I, 558 N.E.2d 1030, 1034 (N.Y. 1990). Given the potential impossibility of substantiating a claim against the corporation without the assistance of its employees, denial of informal access to such employees might preclude adequate investigation of a claim. Confidential interviews with witnesses are necessary "to ascertain what, if any, information the witness may have relevant to his theory of the case, and to explore the witness' knowledge, memory and opinion." Id. at 1034 (quotation omitted).

Finally, depositions are expensive.  As the court noted in <u>Chancellor v. Boeing Co.</u>, 678 F. Supp. 250, 252 (D. Kan. 1998), "formal discovery of a large number of potential witnesses may well frustrate the right of an individual plaintiff with limited resources to a fair trial and deter other litigants from pursuing their legal remedies." (quotation omitted).   Thus, "[t]he broader the definition of 'party' in the interests of fairness to the corporation, the greater the cost in terms of foreclosing vital informal access to facts."  <u>Id.</u> at 1033.

Hovensa has produced no evidence to show that Hodge had either express authority or implied authority to obligate Hovensa with respect to any matter.  Hodge's statements concerning the daily logs and the incident report practice are not binding on Hovensa.  They may be refuted. Hovensa may  present evidence to contradict Hodge's statements.  Indeed, his job title and status show that he did not have sufficient authority to make any binding admissions.  Therefore, Hodge cannot be deemed to be represented by Hovensa's counsel as an employee with authority to obligate Hovensa.

Plaintiffs' counsel could only have violated Rule 4.2 if Hodge were considered to be represented by virtue of his statements being admissible under Fed. R. Evid. 801(d)(2)(D).   Such a construction would controvert the ABA's purpose in amending its commentary, be inconsistent with the relevant Restatements and unnecessarily hinder the discovery process.  Thus, the Court will not consider Fed. R. Evid. 801(d)(2)(D) as establishing a category of represented employees with whom which *ex parte* communication is prohibited.  Even if Hodge's statements are admissible under Fed. R. Evid. 801(d)(2)(D), he is not within the categories of employees with whom Plaintiffs' counsel cannot communicate *ex parte* under Rule 4.2.   Therefore, Plaintiffs' counsel did not violate Rule 4.2 by speaking with Hodge *ex parte.*

**III.    Whether Plaintiffs' Counsel Violated Rule 4.3**.

Finally, the Court recognizes that the Magistrate Judge did not make any findings or reach a conclusion concerning whether Plaintiffs' counsel violated Rule 4.3.  Rule 4.3 obligates counsel to ensure that an unrepresented person understands that counsel is not disinterested.  The testimony of counsel's investigator that he informed Hodge that counsel represents Plaintiffs in a suit against Hovensa is unrefuted.  Thus, from the record developed before the Magistrate Judge, the Court can find no violation of Rule 4.3.

**IV.    Conclusion**

For the reasons expressed, the Court concurs with the Magistrate Judge's finding that Plaintiffs' counsel did not violate Rule 4.2 of the Model Rules of Professional Conduct.  The Court also sees no violation of Rule 4.3 of the Model Rules of Professional Conduct.  Thus, the Court affirms the Magistrate Judge's Order Regarding Defendant's Motion to Disqualify.

ENTER:

DATE:    March 31, 2008              _____/s/_____
                                     RAYMOND L. FINCH
                                     DISTRICT JUDGE